UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COLLEEN SUE ANDERSON,

          Plaintiff,

v.                                    Case No. 20-CV-87

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

          Defendant.

## DECISION AND ORDER

**1. Introduction**

Plaintiff Colleen Anderson alleges that she has been disabled since October 22, 2016. (Tr. 17.) She seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 80-91) and upon reconsideration (Tr. 93-110), a hearing was held before an administrative law judge (ALJ) on December 4, 2018 (Tr. 17). On March 22, 2019, the ALJ issued a written decision concluding that Anderson was not disabled. (Tr. 31.) After the Appeals Council denied Anderson's request for review on November 19, 2019 (Tr. 1-4), she filed this action. All parties have consented to

the full jurisdiction of a magistrate judge (ECF Nos. 3, 5), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Anderson "has not engaged in substantial gainful activity since October 22, 2016, the alleged onset date[.]" (Tr. 19.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a). The ALJ concluded that Anderson has the following severe impairments: "obesity, obstructive sleep apnea, degenerative joint disease, degenerative disc disease of the lumbar spine, fibromyalgia, anxiety, post-traumatic stress disorder (PTSD), mood disorder and psychosis[.]" (Tr. 19.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or

2

Case 1:20-cv-00087-WED    Filed 11/20/20    Page 2 of 9    Document 21

medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Anderson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 20.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Anderson has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except [Anderson] is limited to no climbing of ropes, ladders, scaffolds, heights, and hazards, no concentrated exposure to extreme heat, occasional stooping, crouching, kneeling, crawling, balancing, and climbing ramps and stairs, simple, routine, repetitive and noncomplex work, minimal change in the work routine, no fast-paced production work, no public contact, and, occasional interaction with coworkers and supervisors.

(Tr. 23.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. Anderson's past relevant work was as "a surveillance systems monitor[.]" (Tr. 30.) The ALJ concluded that Anderson "is capable of performing past relevant work[.]" (Tr. 30.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that Anderson "is able to perform her past relevant work." (Tr. 30.) In reaching that conclusion the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Weyland's age, education, and work experience could perform Anderson's "past work as a surveillance systems monitor as generally performed." (Tr. 30.)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

   **4.1 Vocational Expert Testimony**

   Anderson argues that the ALJ erred in concluding that she could perform her "past relevant work as a surveillance system monitor as generally performed." (Tr. 30; ECF No. 11 at 11.) She asserts that the VE reclassified the job as a "semiskilled job" and that, "[a]s such, it was beyond the capacity of Anderson's mental RFC." (ECF No. 11 at 11.) She argues that, because she cannot perform her past relevant work, remand with direction for an award of benefits is appropriate. (ECF No. 11 at 15, 19.)

   The Commissioner agrees that the ALJ erred in evaluating Anderson's past relevant work because the VE's "testimony did not provide the necessary support" for her finding that Anderson could perform her past relevant work. (ECF No. 19 at 3.) However, the Commissioner argues that the court should remand for further proceedings

to develop the record because the VE's testimony was inconsistent regarding the skill level of Anderson's past work. (ECF No. 19 at 3.)

During plaintiff's counsel's examination of the VE, the VE was unclear about whether he could confidently assert that the surveillance agent job was semiskilled (*see, e.g.*, Tr. 71.) After the ALJ read the job description, the VE stated:

> With the requirements beyond high school—I—high school is fine for unskilled. But then it says at least one year of higher education. And that tells me that it, it would be greater than an SVP: 2. And also, the job title is not surveillance system monitor. It's surveillance agent. So I would, I would say that *it would be safe to say that it, it would be at least a semiskilled, 3.* It could be higher, but based on the information, I could say that it, it sounds beyond an unskilled job level.

(Tr. 74) (emphasis added). The VE clearly concluded that the surveillance agent job description was at least semiskilled. (Tr. 74.) However, jobs are not necessarily performed at the skill level of their job descriptions. Although the VE determined that the surveillance agent job description was that of at least a semiskilled job, the VE did not determine whether the job itself was semiskilled or unskilled as performed.

Consequently, the court finds remand with direction for an award of benefits is inappropriate. On remand the ALJ shall conduct further proceedings to evaluate Anderson's past relevant work.

### 4.2 Residual Functional Capacity

Anderson argues that, although the ALJ found she was moderately limited in concentration, persistence, and pace, this limitation was not adequately accounted for in

the RFC. (Tr. 22) (ECF No. 11 at 15-19). She argues that, "[d]espite their number," the other mental limitations in the RFC address social functioning and workplace adaptation, not concentration, persistence and pace. (ECF No. 11 at 15-16.) In response, the Commissioner argues that Anderson "does not actually address why, in light of the specific facts of her own case, the ALJ's mental RFC did not account for all of the functional limitations supported by the record." (ECF No. 19 at 9.)

The ALJ stated that Anderson's "moderate limitations in concentration, attention, and pace… are accommodated in the residual functional capacity reduction to simple, routine, repetitive, and noncomplex work in a setting without fast-paced production work." (Tr. 27.)

It is well-established that "[b]oth the RFC and the hypothetical question presented to a VE must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (unpublished) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). "The ALJ need not use this exact terminology, so long as the phrasing 'specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform.'" (*Id.*) (alteration in original). "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account

for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, No. 19-1394, 796 F. App'x 910, 914 (7th Cir. 2019) (unpublished).

State agency psychological consultants Dr. Richard Hamersma and Dr. Esther Lefevre both opined that Anderson is moderately limited in her "ability to maintain attention and concentration for extended periods" and in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (ECF No. 11 at 17; Tr. 89, 107.)

"[The Seventh Circuit] [has] repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir, 2014)). Although the RFC includes more limitations than just "simple, routine, repetitive, and noncomplex work in a setting without fast-paced production work," the additional mental limitations ("minimal change in the work routine" and "no public contact, and, occasional interaction with coworkers and supervisors") address Anderson's social functioning and workplace adaptation rather than deficiencies in concentration and persistence. (Tr. 27) (*Varga*, 794 F.3d at 815) ("'Few if any work place changes' with limited 'interaction with coworkers and supervisors' deals largely with workplace adaptation rather than concentration, pace, or

8

Case 1:20-cv-00087-WED   Filed 11/20/20   Page 8 of 9   Document 21

persistence."). The ALJ's RFC assessment does not adequately address the limitations found by Anderson's medical providers.

Accordingly, on remand the ALJ shall ensure that Anderson's moderate limitation in concentration, persistence, and pace is incorporated into the RFC assessment.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of November, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge